UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**DISTRICT OF COLUMBIA**                    )
                                            )
    **Plaintiff,**      )
                                            )
    v.                  ) Civil Action No. 10-1986 (ESH)
                                            )
**ALL OF THE PARCEL OF LAND**               )
**IDENTIFIED IN THE DISTRICT OF**           )
**COLUMBIA AS**                             ) Removed from the Superior Court of
                                            ) the District of Columbia
**2626 NAYLOR ROAD, S.E.,**                 ) Civil No. 2010CA007910
**WASHINGTON, D.C. 20020**                  )
**SQUARE/LOT 5633/0801**                    )
                                            )
**and**                                     )
                                            ) **ACTION INVOLVING REAL**
                                            ) **PROPERTY**
**AUTOZONE STORES, INC.** *et al.*          )
                                            )
    **Defendants.**     )
_____)

## **MEMORANDUM OPINION**

    Plaintiff District of Columbia filed suit in the Superior Court of the District of Columbia ("Superior Court") to condemn property in which defendant Autozone Stores, Inc. *et al.* ("Autozone") had a leasehold interest. The suit, authorized by District statutes providing for the condemnation of certain blighted property within the District, was removed to this Court by defendants. Before the Court is plaintiff's motion to remand the proceedings to the Superior Court for lack of subject matter jurisdiction. For the reasons stated herein, the Court will grant plaintiff's motion.

**BACKGROUND**

The National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act, D.C. Law 15-286, 52 D.C. Reg. 859 (2004) ("Skyline Eminent Domain Act"), authorized the National Capital Revitalization Corporation ("NCRC") to exercise eminent domain over the property comprising the Skyland Shopping Center, D.C. Code § 2-1219.19(c) (2005) (repealed 2008), which consists of 18.5 acres on the north side of the intersection of Good Hope Road, Alabama Avenue, and Naylor Road, S.E. in the Hillcrest neighborhood of Ward 7, and includes the property at issue in this case. (Pl.'s Mot. to Remand at 5-6.) The Act was enacted based on the findings by the District of Columbia Council that the communities surrounding the Shopping Center were economically depressed in large part due to the "underused, neglected, and poorly maintained" Shopping Center property that "fueled crime" and was a "blighting factor" on those communities. 52 D.C. Reg. 859 (2005). The Council further found that redeveloping the Shopping Center would require assemblage of its properties, which would be "highly unlikely" without the use of eminent domain by the NCRC. *Id.* Thus, the Skyline Eminent Domain Act authorized the NCRC to initiate condemnation proceedings in the Superior Court and to take title to the condemned properties. D.C. Code § 2-1219.19(c)(2)-(3) (2005) (repealed 2008). Section 2(a)(15) of the Act enumerated "important public purposes" that would be served by condemnation, including the removal of unsafe and unsanitary conditions, crime reduction, and the revitalization of an economically distressed community.

The National Capital Revitalization Corporation and Anacostia Waterfront Corporation Reorganization Act of 2008, D.C. Code § 2-1225 *et seq.* (Supp. 2010) ("NCRC Reorganization Act"), reiterated the findings of the Skyland Eminent Domain Act, but dissolved the NCRC's

board of directors and transferred its "powers, duties, and responsibilities" to the Mayor, including the power to exercise eminent domain over the Skyland Shopping Center. D.C. Code §§ 2-1225.01, 2-1225.42. Specifically, when property within the District is needed by the Mayor for any "municipal use," a complaint may be filed in the Superior Court in the name of the District for the condemnation of that property. D.C. Code §§ 2-1225.42, 16-1311.

The property at issue in this case is part of the Skyland Shopping Center, and on October 22, 2010, plaintiff initiated condemnation proceedings in the Superior Court against the property and Autozone. (Pl.'s Mot. to Remand at 8.) Autozone, which is incorporated in Nevada and has its principal place of business in Tennessee (Defs.' Notice of Removal ¶ 10), had a leasehold interest in the property. (Pl.'s Mot. to Remand at 8.) In their Answer, defendants raised several defenses including that the proposed condemnation violated the Takings Clause of the Fifth Amendment of the United States Constitution, U.S. Const. Amend. V, because it was not for a public use. (Defs.' Notice of Removal Ex. A, Defs.' Answer at 9.) On November 18, 2010, defendants removed the case to federal court. (Defs.' Notice of Removal at 1-2.) Before the Court is plaintiff's motion to remand to the Superior Court on grounds that this Court lacks subject matter jurisdiction.

## ANALYSIS

### I. STANDARD OF REVIEW

A civil action filed in state court may only be removed to a United States district court if it could have originally been brought in federal court. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as civil actions involving "citizens of different states" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

3

Upon a motion to remand a removed case to state court, the party opposing the motion "'bears the burden of establishing that subject matter jurisdiction exists in federal court.'" *RWN Dev. Grp., LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008) (quoting *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005)). Furthermore, courts are to construe the removal statute narrowly in order to avoid federalism concerns, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), and any doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand. *Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (citing *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)).

Defendants claim that removal in this case is proper under both federal question and diversity jurisdiction. The Court will examine each doctrine in turn.

## II. FEDERAL QUESTION JURISDICTION

Federal question jurisdiction exists when a "'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)). In the latter scenario, "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, "[i]t is 'settled law that a case may *not* be removed to federal court on the basis of a federal defense'. . . 'even if the defense is anticipated in the plaintiff's complaint.'" *Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 117 (D.D.C. 2009) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Defendants argue that federal question jurisdiction exists because plaintiff's Complaint states that its condemnation is for a "public use" and therefore arises under Takings Clause of the Fifth Amendment of the United States Constitution, which states, "nor shall private property be taken for public use, without just compensation," U.S. Const. amend. V. (Defs.' Notice of Removal ¶¶ 8-9.) They also argue that a substantial federal question exists because the District must comply with the Fifth Amendment's requirements of "public use" and "just compensation" in order to proceed with its condemnation action. (Defs.' Mem. in Opp.'n at 8.) Plaintiff responds by arguing that there is no federal question because its condemnation action arose entirely under District law.[1] (Pl.'s Mot. to Remand at 16.)

It is clear from plaintiff's Complaint that the District is asserting a right created by District, not federal law. The Complaint explicitly states that the authority for the District's condemnation is rooted in District statutes, namely D.C. Code §§ 16-1311 and 2-1225.42, the NCRC Reorganization Act, and the Skyline Eminent Domain Act. (Defs.' Notice of Removal Ex. A, Compl. ¶ 3.) Thus, District rather than federal law creates plaintiff's cause of action. That the Complaint articulates "public uses" for the property being condemned does not signify that the Complaint arises under the Fifth Amendment. Indeed, District law also requires that land condemned by the District serve a public purpose. *See* D.C. Code § 16-1311 (authorizing condemnation proceedings when real property in the District is needed for a "municipal use"); *id.* § 2-1225.42(b) ("The Mayor may exercise eminent domain . . . for the purpose of redeveloping the Skyland Shopping Center in order to achieve the *public purposes* set forth in section 2(a)(15) of the Skyland Eminent Domain Act.") (emphasis added). Indeed, plaintiff's

---

[1] Plaintiff also argues that under the District's statutory scheme, the Superior Court has exclusive jurisdiction over condemnation proceedings brought by the District. (Pl.'s Mot. to Remand at 13-16.) Because the Court finds that both federal question and diversity jurisdiction are lacking, it need not address this argument.

5

Complaint specifically states that condemnation of defendant's property would serve the public purposes enumerated in section 2(a)(15) of the Skyland Eminent Domain Act.[2] (Defs.' Notice of Removal Ex. A, Compl. ¶ 4.) Thus, the Complaint's reference to "public uses" does not signify that it arises under federal law.

Nor does the fact that the District must comply with the Taking Clause of the Fifth Amendment give rise to a federal question. Defendants raised the Takings Clause as a defense to plaintiff's Complaint, and as noted above, a federal defense cannot form the basis for federal question jurisdiction. *Kormendi/Gardner Partners*, 606 F. Supp 2d. at 117. This is true even if compliance with the Fifth Amendment turns out to be a disputed issue. Indeed,

> "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. . . . [b]y unimpeachable authority, *a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby*."

*Colo. ex rel. Land Acquisition Comm'n v. American Mach. & Foundry Co.*, 143 F. Supp. 703, 708 (D. Colo. 1956) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 115-116 (1936)) (emphasis added); *see also City of Cleveland v. Corley*, 398 F.2d 41, 43 (6th Cir. 1968) ("[P]laintiff must show, both in stating and in proving his case, that his right to recover stands on federal laws; and otherwise, even though . . . the case will turn on and be ruled by some federal law under which defendant is claiming, federal jurisdiction will fail.") (citation omitted).

Courts applying these principles have uniformly found that constitutional defenses to state and local condemnation proceedings do not give rise to federal question jurisdiction. *See, e.g.*, *Urban Renewal Authority of Trinidad, Colo. v. Daugherty*, 271 F. Supp. 729 (D. Colo.

---

[2] Although portions of the Skyline Eminent Domain Act have been amended, the Council explicitly affirmed the "findings made in section 2" of the Act, which include the public purposes served by condemnation of the Skyland Shopping Center as set forth in section 2(a)(15). D.C. Code § 2-1225.42(a).

6

1967) (remanding condemnation proceeding brought under state law for lack of federal question jurisdiction despite defendants' claim that the condemnation was for private use and compensation was unjust in violation of the Fourteenth Amendment); *Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612 (D.P.R. 1982) (finding no federal question jurisdiction over Puerto Rico's condemnation proceeding brought under local law, despite defendant's assertion that the condemnation violated Fifth and Fourteenth Amendments).

Finally, defendants attempt to recast the issue by arguing that compliance with the Taking Clause is a condition to pursuing a condemnation suit, and is thus necessarily a part of the District's Complaint. (Defs.' Mem. in Opp'n at 8.) However, the District's condemnation action, "though in an ultimate sense governed by the federal due process standard . . . [does] not arise out of the Constitution, treaties, or laws of the United States." *Corley*, 398 F.2d at 43 (finding no federal question jurisdiction over condemnation proceeding brought under Ohio law); *see also Gully*, 299 U.S. at 115 (finding no federal question in dispute over tax imposed under state law, even though tax must be "consistent with the Constitution of the United States").

As the District's condemnation action was initiated pursuant to District law, and defendants' constitutional defenses do not create a federal question, federal question jurisdiction does not provide a basis for removal.[3]

## III. DIVERSITY JURISDICTION

For a case to be removed to federal court on diversity jurisdiction grounds there must be "complete diversity between the parties opposed in interest." 13E Charles Alan Wright et al.,

---

[3] Defendants suggest, in a footnote, that the Fifth Amendment completely preempts condemnation proceedings brought in the District so as to convert them into federal claims. (Defs.' Mem. in Opp'n at 6 n.5.) This argument is without merit. Defendants acknowledge that there is "no preemptive federal statute involved here," *id.*, and the notion that the Constitution preempts all condemnation proceedings in the District borders on frivolous.

7

*Federal Practice and Procedure* § 3606 (3d ed. 2009). It is undisputed that diversity of jurisdiction does not exist between a state and a citizen of another state, *District of Columbia v. Owens-Corning Fiberglas Corp.*, 604 F. Supp. 1459, 1461 (D.D.C. 1985), and that the District of Columbia is considered a state rather than a citizen for diversity purposes. *Mann v. District of Columbia*, 742 F.2d 750, 751 (3rd Cir. 1984). (Pl.'s Mot. to Remand at 11; Defs.' Mem. in Opp'n at 10.) However, defendants argue that the Mayor, and not the District itself, is the real party in interest and a citizen of the District, making him diverse from the defendants. (Defs.' Mem. in Opp'n at 10.) The determination of a real party in interest for purposes of diversity jurisdiction "must rest on the substantive right that a given party possesses" and "must bear upon the essential nature of the proceeding." *Cordeco*, 534 F. Supp. at 615.

Defendants apparently do not dispute the fact that when the Mayor initiates a condemnation proceeding under District law, he does so in his official capacity. This fact alone suggests that the District is the real party in interest. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . the real party in interest is the entity"); *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54 (D.D.C. 2009) ("a lawsuit against the Mayor acting in his official capacity is the same as a suit against the District"); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981) (finding that because state attorney general brought suit against defendant in his official capacity, the state was the real party in interest and diversity jurisdiction did not exist).[4]

---

[4] Defendants attempt to distinguish these authorities regarding official-capacity suits by pointing out that the case at hand involves a "condemnation case commenced under the separate authority vested in the Mayor." (Defs.' Mem. in Opp'n at 11 n.10.) This argument is circular, as the Mayor's separateness from the District is part of the real party in interest inquiry. Furthermore, defendants do not explain why the condemnation context materially distinguishes this case from

Moreover, an examination of the relevant District statutes reveals that the District is the real party in interest in this condemnation suit. These statutes provide that a complaint for condemnation may be filed "in the name of the District of Columbia," D.C. Code § 16-1311, when property in the District is needed for an "authorized municipal use," *id.*, and "title to the property . . . vest[s] in the District of Columbia" and is "deemed to be condemned and taken for the use of the District." D.C. Code § 16-1314(b), *see also id.* § 16-1319. These factors are significant when determining the real party in interest in a condemnation proceeding. Thus, for example, the court in *American Machine & Foundry Co.* found that Colorado, rather than a state agency, was the real party in interest where Colorado law only permitted the agency to institute condemnation proceedings in the name of the state and the state took title to the condemned property. *American Mach. & Foundry Co.*, 143 F. Supp. at 710. Similarly, the court in *Cordeco* held that Puerto Rico, not its agency, was the real party in interest where the agency could not initiate condemnation proceedings in its own name but instead had to request the Governor of Puerto Rico to initiate such proceedings in the Commonwealth's name, and title to the condemned property vested in the Commonwealth until court order vested it in the agency. *Cordeco*, 534 F. Supp. at 615-16. *See also DeLong Corp. v. Oregon State Highway Comm'n*, 233 F. Supp. 7, 12 (D. Or. 1964) (finding it "of great importance," in deciding whether state commission was mere agent of state or a separate citizen for diversity purposes, that state statute required condemnation proceedings instituted by commission to be prosecuted "for the state in

---

cases holding that a state is the real party in interest to suits initiated by a state official in his official capacity. *See, e.g.*, *Scott*, 660 F.2d at 250; *Olsen v. Doerfler,* 225 F. Supp. 540, 541 (E.D. Mich.1963) (holding that in suit by county prosecutor to enjoin the sale of obscene materials, Michigan was real party in interest because prosecutor, a constitutional officer enforcing Michigan law under express statutory authority, was acting in his official capacity); *Eure v. NVF Co.*, 481 F. Supp. 639, 641 (E.D.N.C.1979) (finding that suit brought by secretary of state, under statute authorizing him to enforce state securities law, was brought in his official capacity such that state was real party in interest and diversity did not exist).

the name of the state, by and though the Commission");[5] *United States ex rel. and for Use of Tennessee Valley Authority v. Pressnell*, 328 F.2d 580, 581-82 (6th Cir. 1964) (finding that United States rather than federal agency was real party in interest where statute required that agency exercise eminent domain in the name of the United States and that title to condemned real estate be taken in the name of the United States).

Defendants argue that the Mayor is the real party in interest by pointing to statutory language authorizing condemnation when property is "needed by the Mayor," D.C. Code § 16-1311, and requiring the Mayor to sign a declaration of taking. D.C. Code § 16-1314. However, condemnation is only authorized when the Mayor needs property for an "authorized municipal use," D.C. Code § 16-1311, and the Mayor's signature on a declaration of taking merely describes the procedure by which he may initiate suit. *See Pressnell*, 328 F.2d at 582 (finding United States rather than federal agency to be real party in interest, even though statute provided that agency "may cause" condemnation proceedings to be instituted).

Finally, defendants argue that the Mayor succeeded to the powers of the NCRC, which was a real party in interest, and exercises eminent domain for the benefit of the District in the way that trustees manage trust property on behalf of trust beneficiaries, who are not real parties in interest. (Defs.' Mem. in Opp'n at 12-14, 16.) It is true that the Mayor received the "powers,

---

[5] Defendants distinguish these cases by pointing out that they involve the exercise of state eminent domain power. *See, e.g.*, *American Mach. & Foundry Co.*, 143 F. Supp. at 710 (noting that eminent domain is an attribute of sovereignty, and that in exercising eminent domain, the state agency was acting as an agent of the sovereign state). Defendants argue that here, by contrast, federal eminent domain power is being exercised because the District, as a municipal corporation, does not possess a state's eminent domain power. (Defs.' Mem. in Opp'n at 14-15.) While it is true that Congress delegated legislative powers to the Council, *see* D.C. Code §§ 1-201.02, 1-204.04, and the Council enacted the statutes authorizing condemnation, defendants do not explain why this delegation would make the Mayor, rather than the District, the real party in interest to this condemnation proceeding. Additionally, defendants' assertion that Congress expressly delegated eminent domain power to the Mayor is contrary to the statutory scheme that governs condemnation proceedings.

duties, and responsibilities" of the NCRC's board of directors. D.C. Code §§ 2-1225.01, 2-1225.42. However, even if the Court assumes *arguendo* that the NCRC would have been a real party in interest to this condemnation proceeding, the Mayor did not inherit all of the powers of the NCRC. Specifically, the NCRC, unlike the Mayor, could bring condemnation proceedings in its own name and it took title to any property so condemned. D.C. Code § 2-1219.19(a) (2001) (repealed 2008). Thus, it is clear that the Mayor is not, merely by virtue of inheriting the NCRC's powers and responsibilities, a real party in interest. Finally, defendants' analogy to trustees and trust beneficiaries is misplaced. Defendants' analogy relies on *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), where the Supreme Court held that a business trust's trustees were the real parties in interest in a dispute over trust property, rather than the trust's shareholder beneficiaries. The Court found dispositive that the trustees were authorized to "take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Id.* at 464-65. Here, suit was brought in the name of the District, which also takes title to the condemned property, so *Navarro* is inapposite.

In sum, the "essential nature" of this proceeding demonstrates that the District, and not the Mayor, is the real party in interest. Thus, diversity jurisdiction does not exist.[6]

---

[6] Because the Court finds that neither federal question nor diversity jurisdiction exist, it need not address the parties' arguments regarding abstention.

## CONCLUSION

The Court concludes that neither federal question nor diversity jurisdiction exists in this case. Thus, there is no basis for removal, and the Court will grant plaintiff's Motion to Remand to the Superior Court.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: January 21, 2011